Matter of Haag v DiNapoli (2022 NY Slip Op 00234)





Matter of Haag v DiNapoli


2022 NY Slip Op 00234


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

532618
[*1]In the Matter of John Haag, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date:November 19, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Lippes Mathias LLP, Albany (Ashley M. Emery of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick Brodie of counsel), for respondents.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's applications for performance of duty and ordinary disability retirement benefits.
Petitioner, a correction officer, had reconstruction surgery on his right knee in 1997 as a result of an injury he suffered while restraining an incarcerated individual during an attempted escape. He returned to full duty several months later but subsequently underwent several other surgeries on his knee, including knee replacement surgery in 2012. In September 2013, petitioner bid on and was awarded the position of perimeter patrol. His job duties in this position included carrying a firearm and patrolling the correctional facility's perimeter and parking areas. Petitioner continued to suffer from complications from the knee replacement surgery, including blood clots and an infection, and ultimately underwent an above-knee amputation of the right leg in March 2015. Petitioner was fitted for a prosthetic leg and returned to work at his perimeter patrol position.
In May 2015, petitioner filed applications for ordinary disability retirement benefits and performance of duty disability retirement benefits. The applications were initially disapproved and petitioner requested a hearing. Following the hearing, the Hearing Officer found that petitioner had failed to demonstrate that he was permanently incapacitated from the performance of his duties and denied the applications. Respondent Comptroller adopted the Hearing Officer's decision, and this CPLR article 78 proceeding by petitioner ensued.
We agree with petitioner that the Comptroller's determination is not supported by substantial evidence. "[I]n support of his applications for disability retirement benefits, petitioner bore the burden of establishing that he is permanently incapacitated from performing his job duties" (Matter of Meluch v New York State & Local Police & Fire Retirement Sys., 80 AD3d 976, 976 [2011]; see Retirement and Social Security Law §§ 507-a [c]; 507-b [a]). The Comptroller's determination in this regard will not be disturbed if it is supported by substantial evidence (see Matter of Clarke v DiNapoli, 187 AD3d 1286, 1287 [2020]; Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [2019]).
The dispositive issue is whether petitioner was permanently incapacitated from performing his actual job duties following the amputation of his right leg above the knee in March 2015. There is no dispute that petitioner was able to continue performing his perimeter patrol duties using a modified vehicle upon his return to work with an above-knee prosthesis in August 2015. As petitioner explained, however, he was also required to work mandatory overtime up to three times per week "depending on when [he] got stuck." Those duties included facility rounds requiring petitioner to escort incarcerated individuals [*2]throughout the facility and posts in housing units, which involved the "care, custody and control of all [incarcerated individuals]." Petitioner was also required to respond to emergencies, including assaults involving incarcerated individuals and correction officers. In that regard, petitioner acknowledged that he was neither able to run nor to restrain incarcerated individuals.
Petitioner's treating orthopedic surgeon, Scott Russinoff, initially opined that petitioner was permanently unable to perform the general job duties of a correction officer because of his physical limitations. Although he acknowledged on cross-examination that petitioner was capable of performing the perimeter post tasks, on redirect he testified that he was not aware whether petitioner was required to work mandatory overtime. The same holds true for Louis Nunez, an orthopedic surgeon who examined petitioner on behalf of respondents. In his initial report, Nunez concluded that petitioner was permanently impaired from performing the duties of a correction officer. Nunez observed that petitioner was "not involved with the . . . population [of incarcerated individuals]. . . . However, were he to go back into the population, he would put himself and his colleagues at risk." In an addendum, Nunez explained that petitioner was not disabled from performing the duties of perimeter patrol, which he assumed did not involve interaction with incarcerated individuals. Notably, petitioner's mandatory overtime duties are not mentioned in the addendum. Petitioner's other treating orthopedic surgeon, David Stamer, testified that petitioner was permanently disabled from performing the job duties of a correction officer, which he understood to include "periodically . . . breaking up fights and, you know, basically a high impact type of position, not a sedentary job." Stamer did not know that petitioner had returned to work.
Although the Comptroller is certainly authorized to weigh and credit the opinion of one medical expert over another, there are no conflicting medical opinions in this case (see Matter of McGowan v DiNapoli, 178 AD3d 1243, 1243-1244 [2019], lv denied 35 NY3d 917 [2020]). All three orthopedic surgeons testified that petitioner was incapable of performing the basic duties of a correction officer due to his physical limitations. Moreover, Nunez opined that placing petitioner with incarcerated individuals would endanger both petitioner and his colleagues. Although Russinoff and Nunez acknowledged that petitioner was capable of performing the perimeter patrol, neither witness was advised of petitioner's mandatory overtime duties. Cumulatively, all the medical evidence confirms that petitioner was incapable of performing the duties of a correction officer assigned to posts involving the population of incarcerated individuals.
There is no dispute that petitioner was required to perform such mandatory overtime duties from the time he returned to work in August [*3]2015 until his retirement in September 2018. That petitioner answered in the affirmative when asked whether he fulfilled those duties does not mean that he was medically capable of doing so. When asked why he retired, petitioner explained, "Multiple reasons. My leg pain having — putting me in different positions where I couldn't work. It was a multitude of reasons all related back to me and my leg" (emphasis added). Those "different positions" most likely refer to the various mandatory overtime posts that he was required to work. In these circumstances, the Comptroller's determination that petitioner was not permanently incapacitated from performing his actual job duties is not supported by substantial evidence and must be annulled (compare Matter of Kilfoile v McCall, 239 AD2d 836, 837 [1997]).
Egan Jr., J.P., Clark and Pritzker, JJ., concur.
Colangelo, J. (dissenting).
In my view, substantial evidence — particularly petitioner's own statements as to his ability to perform his work tasks — supports the determination of respondent Comptroller. Petitioner testified that, following the 2015 amputation, he returned to work at his perimeter patrol position and he continued to work in that position until he retired in September 2018. Once informed of petitioner's actual job duties, the physicians who examined him generally concluded that he was not permanently incapacitated from performing his job duties. Petitioner's treating orthopedic surgeon, Scott Russinoff, initially testified that, in his opinion, petitioner was permanently incapacitated from performing the duties of a correction officer because he would have difficulty running or restraining an incarcerated individual.[FN1] Russinoff admittedly was not aware of petitioner's actual job duties and, once presented with the duties of petitioner's perimeter patrol position, he concluded that petitioner was not permanently incapacitated from performing those duties. Louis Nunez, an orthopedic surgeon who examined petitioner on behalf of respondent New York State and Local Employees' Retirement System, initially found petitioner to be permanently incapacitated from performing the duties of a correction officer, citing an inability to restrain incarcerated individuals. However, once he was informed of petitioner's actual job duties, he similarly opined that petitioner was not permanently incapacitated from performing those duties. David Stamer, another orthopedic surgeon treating petitioner, opined that petitioner was permanently incapacitated from performing the duties of a correction officer. Stamer admitted, however, that he did not know that petitioner had returned to work after the amputation and that he was unaware of petitioner's actual job duties.
Petitioner also testified that he was required to work mandatory overtime, which included contact with incarcerated individuals and responding to emergencies, and that he was able to fully perform those duties up until his retirement [*4]in 2018. "Notably, the assessment of credibility and resolution of apparent conflicting evidence was for the Comptroller to resolve" (Matter of Lamb v DiNapoli, 139 AD3d 1312, 1313 [2016] [citations omitted]; see Matter of Yurko v DiNapoli, 122 AD3d 1047, 1048 [2014]). Given the foregoing, and inasmuch as the proper inquiry is whether petitioner was permanently incapacitated from his actual job duties (see 2 NYCRR 364.1; Matter of McGowan v DiNapoli, 178 AD3d 1243, 1245 [2019], lv denied 35 NY3d 917 [2020]; Matter of Riguzzi v DiNapoli, 82 AD3d 1484, 1485 [2011]; Matter of O'Halpin v New York State Comptroller, 12 AD3d 771, 772 [2004], lv denied 5 NY3d 702 [2005]), I would confirm, as supported by substantial evidence, the Comptroller's determination that petitioner did not demonstrate that he was permanently incapacitated from performing his actual job duties (see Matter of McGowan v DiNapoli, 178 AD3d at 1245; Matter of O'Halpin v New York State Comptroller, 12 AD3d at 772).
ADJUDGED that the determination is annulled, without costs, petition granted, and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: We note that Russinoff opined in a July 2015 letter, rendered a few months after the amputation, that petitioner could return to full duty as a correction officer, including restraining incarcerated individuals.